UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGARET S.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

CASE NO. 3:20-cv-05833-BAT

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION**

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. She contends the ALJ erroneously discounted a treating chiropractor's opinion and her testimony.[1]  Dkt. 10 at 1.  For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 62 years old, has a college degree and a master's degree in teaching, and has worked as a teacher and post-production video operations supervisor.  Tr. 35, 173.  In February 2018, she applied for benefits, alleging disability as of September 1, 2010.  Tr. 136-37. Her application was denied initially and on reconsideration.  Tr. 70-72, 76-82.  The ALJ

---

[1] Plaintiff also assigns error to the ALJ's residual functional capacity ("RFC") assessment and step-four findings. Because these arguments depend entirely on the other assignments of error they need not be addressed separately.  Dkt. 10 at 14-15.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 1

conducted a hearing in September 2019 (Tr. 30-50), and subsequently found Plaintiff not disabled. Tr. 15-24. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Plaintiff did not engage in substantial gainful activity between the alleged onset date (September 1, 2010) and the date last insured ("DLI") (December 31, 2015).

**Step two:** Through the DLI, Plaintiff's fibromyalgia was a severe impairment.

**Step three:** Through the DLI, this impairment did not meet or equal the requirements of a listed impairment.[3]

**RFC:** Through the DLI, Plaintiff could perform light work with additional limitations: she could lift/carry 20 pounds occasionally, and 10 pounds frequently. She could sit, stand, and walk for about six hours each in an eight-hour workday. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. She could frequently finger, handle, and reach. She needed to avoid concentrated exposure to hazards.

**Step four:** Through the DLI, Plaintiff could perform her past work as an elementary school teacher, and was therefore not disabled.

Tr. 15-24.

## DISCUSSION

**A.    Plaintiff's Testimony**

The ALJ discounted Plaintiff's testimony her constant pain affected her shoulder, hands and feet; that she lacked stamina, needed naps, had trouble walking to her car and could barely lift a soda can. Tr. 20. The ALJ found Plaintiff's testimony was inconsistent with (1) her conservative treatment and objective findings which were mostly normal, and (2) her activities. Tr. 20-22. Plaintiff contends these reasons are not clear and convincing, as required in the Ninth

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 2

Circuit.[4]  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues the ALJ failed to identify with specificity any activities contradicting her testimony.  Dkt. 10 at 10. While the ALJ could have been more specific in discussing this ground, the decision provides enough for the Court to discern the ALJ's reasoning. The ALJ noted Plaintiff stated her pain symptoms started long before she stopped working and that she was able to work despite being in pain. Tr. 20. Although Plaintiff indicated she could barely lift a coke can, she engaged in household activities after she stopped working and even though she was in pain. The ALJ noted, as documented in the medical records, Plaintiff was walking a lot and doing yoga. Tr. 21. The ALJ's determination that Plaintiff's activities do not square with the severity of her claimed limitations is supported by substantial evidence.  *See, e.g.*, Tr. 787 (referencing Plaintiff's regular exercise and yoga), 789 (Plaintiff recommended to keep practicing yoga), 798 (Plaintiff walking quarter-mile twice a day and practicing yoga), 799 (Plaintiff walking 20 minutes daily, getting 35 minutes of pool therapy, and 1-2 90-minute yoga classes per week), 814 (exercising daily), 817 (Plaintiff describes herself as "retired" and reports she is learning to quilt and exercises regularly).

In short, based upon the evidence of record regarding Plaintiff's degree of activity the Court cannot say the ALJ unreasonably found her activities contradict the limitations Plaintiff alleged. *See* Tr. 20 (ALJ's summary of Plaintiff's allegations).

The ALJ also found Plaintiff's allegations were inconsistent with the medical record, which indicated her functional testing was normal and that conservative treatment improved her fibromyalgia. The ALJ found during the relevant period, Plaintiff's medical records showed she

---

[4] Plaintiff's opening brief also contains a lengthy summary of her allegations, which does not advance Plaintiff's assignment of error and need not be addressed. *See* Dkt. 10 at 12-14.

was not in acute distress, was alert, had good gait and normal strength and normal or good musculoskeletal range, and was noted to be walking a lot. Tr. 21. Conservative treatment was recommended, and it was noted Plaintiff engaged in exercise and yoga. The ALJ validly discounted Plaintiff's testimony as inconsistent with the medical record and this determination is supported by substantial evidence. *See, e.g.*, Tr. 784 (Plaintiff's longstanding fibromyalgia treated with massage and she is doing better), 789 (doctor describes Plaintiff as in "general good health" and her "knee, hip, and shoulder movements are satisfactory" despite tender points), 800 (Plaintiff has normal gait; doctor recommended trying medication for fibromyalgia, but she reports she is happy with acupuncture, massage therapy and yoga), 807 (normal gait and coordination), 817 ("good range of motion of her large joints" despite tender points).

Although Plaintiff emphasizes normal objective findings are consistent with a fibromyalgia diagnosis (Dkt. 10 at 12), the ALJ did not dispute Plaintiff has fibromyalgia. Rather the ALJ examined the medical record to determine the extent of the functional limitations caused by Plaintiff's fibromyalgia and reasonably found the record was inconsistent with the degree of limitation alleged.  In combination with the evidence of conservative treatment and inconsistent activities, the ALJ did not err in relying on a lack of objective corroboration as a reason to discount Plaintiff's subjective allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Because the ALJ discounted Plaintiff's testimony based upon legally sufficient reasons supported by substantial evidence, the Court affirms this portion of the ALJ's decision.

B.     **Opinion of Joseph Soprani, L.Ac., M.Ac.**[5]

Plaintiff's treating acupuncturist, Mr. Soprani, wrote an undated letter confirming weekly acupuncture sessions for pain management. Tr. 246. He stated, in relevant part:

> She is no long[er] able to work or do many simple household tasks. She reports not being able [to] stand or sit for more than an hour at a time, she is restricted to 10 pounds or less for lifting. Bending, twisting and walking are severely restricted. She experiences some pain 100% of the time. Even her sleep is interrupted by pain.
>
> Acupuncture continues to help mediate her condition.

Tr. 246. The ALJ discounted Mr. Soprani's letter on the grounds that: (1) Mr. Soprani is not an acceptable medical source qualified to render a medical opinion regarding Plaintiff's functional limitations, (2) the letter is undated and it is not clear if it describes Plaintiff's functioning pre-DLI, (3) the letter references Plaintiff's self-report, and (4) the letter is inconsistent with the evidence showing that despite Plaintiff's tenderness, she did not have substantial abnormalities or substantial deficits in physical functioning. Tr. 22-23.

The Commissioner does not defend the ALJ's first reason, and it is improper under the current version of the regulations, which define a medical opinion to be written by any state-licensed healthcare worker. *See* 20 C.F.R. § 404.1502(a), (d); 20 C.F.R. § 404.1513(a)(2). The ALJ did, however, properly consider whether Mr. Soprani possessed the relevant training or specialization to assess Plaintiff's functional limitations. *See* 20 C.F.R. § 404.1520c(c)(4). The ALJ reasonably found Mr. Soprani's specialization in acupuncture diminished the weight of his opinion regarding functional limitations caused by Plaintiff's medical conditions.

---

[5] Plaintiff's opening brief also devotes multiple pages to summarizing other medical evidence in the record but does not connect this summary with any particular error in the ALJ's decision. Plaintiff has the burden of proving harmful error and the Court finds a summary of other medical evidence, is insufficient to meet this burden. Dkt. 10 at 6-9.

The ALJ's finding Mr. Soprani's undated letter may not pertain to the adjudicated period is not supported by substantial evidence. The contention the letter Mr. Soprani submitted in 2018 does not relate to Plaintiff's DLI is belied by Mr. Sporani's treatment records which span the time period between July 2005 and September 2017. *See* Exhibit 1F, Tr. 246-572.

The ALJ also found Mr. Sporani integrated Plaintiff's claims and that it was difficult to separate his opinion from reiteration of Plaintiff's self-report. However, it cannot be reasonably said Mr. Soprani was simply parroting what Plaintiff said in rendering his opinion. His records clearly show that he had been treating Plaintiff for many years and thus the ALJ erred in rejecting his opinion as relying to a large extent on Plaintiff's discredited statements.

"Lastly, and more importantly," the ALJ found Mr. Soprani's opinion was inconsistent with the record, showing that despite Plaintiff's tenderness, she did not have substantial abnormalities nor substantial deficits in physical functioning. Tr. 23. The ALJ's summary of the medical record points to evidence of Plaintiff's normal objective testing, ability to exercise and walk on a regular basis, and exclusively conservative treatment. Tr. 21-22. The ALJ thus reasonably found that Mr. Soprani's description of disabling limitations was inconsistent with other evidence in the record, which renders Mr. Soprani's opinion less persuasive.

The Court notes the parties' disagreement over the standards this Court should apply in reviewing claims, such as the one here, which are filed after March 27, 2017. The Commissioner suggests the ALJ is relieved of providing "clear and convincing" or "specific or legitimate" reasons to reject a medical or other source opinion. Dkt. 14 at 9. Plaintiff argues otherwise and the Court agrees. The Commissioner's suggestion implies the ALJ need not give any reason so long as the ALJ's conclusion is supported by substantial evidence. The suggestion improperly conflates whether substantial evidence exists to support the decision, with the need for the ALJ

to articulate his or her consideration of that evidence in a manner sufficient for review. *See, e.g.*, *Kathleen G. v. Commissioner of SSA*, 2020 WL 6581012 (W.D. Wash., Nov. 10, 2020), at *3 (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

This Court defers to the ALJ's findings even when the evidence supporting the finding is susceptible to more than one rationale interpretation, and the Court disagrees with the ALJ's interpretation. *See Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir 2008). For this reason, the Court defers to the ALJ's finding that the record undercuts Mr. Soprani's opinions, even though Plaintiff contends the record can be interpreted differently. This deference reflects the nature and definition of the standard "substantial evidence." But that deference assumes the ALJ's decision articulates specific and legitimate reasons to discount medical evidence that are reviewable. A clear statement of the agency's reasoning is necessary because the Court can affirm the agency's decision to deny benefits only on the grounds invoked by the agency. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Thus, if the ALJ's decision fails to articulate specific and legitimate reasons to support its assessment of the medical evidence, the Court would be faced with determinations that support a conclusion which are not reviewable. In such a situation, being unable to engage in fact-finding on its own, and being unable to review the ALJ's rationale, the Court would be placed in position of remanding the case for further administrative proceedings.

However, in this case, as discussed above, because the ALJ articulated at least one specific and legitimate reason to discount Mr. Soprani's opinion that is supported by substantial evidence, the Court affirms the ALJ's determination to discount Mr. Soprani's opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 26th day of April 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge